## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAA Industries, Ltd., and, | : | |
| | : | |
| Command Arms Accessories, LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.:_____ |
| | : | |
| ME Technology Inc., | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

CAA Industries Ltd., a corporation organized under the laws of Israel, and Command Arms Accessories, LLC, a Pennsylvania limited liability company, by way of Complaint against ME Technology Inc., a New York corporation, on knowledge as to Plaintiffs, and otherwise on information and belief, allege as follows:

### Nature of the Action

1.      This is a civil action for trademark and trade dress infringement, false designation of origin, false advertising, and counterfeiting under the trademark laws of the United States, including 15 U.S.C. sections 1114, 1116, 1117, and 1125(a); common law trademark and trade dress infringement and unfair competition; violation of the Anticybersquatting Consumer Protection Act, including 15 U.S.C. section 1125(d); conversion; and, patent infringement under 35 U.S.C. section 271.

**Jurisdiction**

2.      Subject matter jurisdiction over this action is proper in this court under 15 U.S.C. section 1121 and 28 U.S.C. sections 1331, 1332, 1338, and 1367(a) over the related state law claims under the doctrine of supplemental jurisdiction.

**Venue**

3.      Venue is proper in this district under 28 U.S.C. section 1391 and 1400 for the reasons set forth below.

**The Parties**

4.      Plaintiff, CAA Industries Ltd., ("Plaintiff" or "CAA Industries"), is a corporation organized under the laws of Israel, having a place of business at 1 HaBonim St., P.O. Box 861, Qiryat-Gat, Israel 8258201.

5.      Plaintiff, Command Arms Accessories, LLC ("Plaintiff" or "CAA, LLC") is a Pennsylvania limited liability company, entity no. 3996905, having an address at 1208 Branagan Drive, Tullytown, Pennsylvania 19007.

6.      Defendant, ME Technology Inc. ("Defendant" or "ME Technology"), is a New York corporation doing business as CAA USA, and having a place of business at 3901 N.E. 12th Avenue #400, Pompano Beach, Florida 33064.

**Statement of Facts Common to All Counts**

7.      Plaintiff CAA, LLC is the owner by assignment of the name, trade name and trademark COMMAND ARMS ACCESSORIES, the trademark CAA, and the registered trademark , U.S. Reg. No. 3,559,649[1] (collectively "the Assigned Marks").  CAA, LLC acquired the Assigned Marks from another entity in the manner described below.

_____

[1] Now abandoned.

8. Command Arms Accessories, LLC, Pennsylvania entity no. 3315764 ("Command Arms Accessories '764"), was a Pennsylvania limited liability company formed on June 27, 2005 for the purpose of distributing in the U.S. and Canada firearms accessories manufactured by two companies, First Samco, Inc. and TDI Arms Systems, Ltd.  While Command Arms Accessories '764 actively operated from June 2005 until November 2010, it used in interstate commerce the Assigned Marks in connection with the commercialization of a wide variety of firearms accessories.

9. Command Arms Accessories '764, by and through a Liquidating Trustee, executed an asset purchase agreement dated November 16, 2010 ("Asset Purchase Agreement"), and transferred substantially all of its assets to Tactical Arms, Ltd. including the Assigned Marks and the goodwill associated therewith.

10. Tactical Arms, Ltd. is the prior name of Plaintiff CAA Industries, Ltd., which is a firearms accessories manufacturer in Israel and was wholly owned by Moshe Oz and Eldad Oz in 2010.

11. On December 10, 2010, Moshe Oz and Eldad Oz formed CAA Buyer, LLC[2]. Then, Tactical Arms, Ltd. assigned all rights and assets, including the Assigned Marks and associated goodwill, it had attained under the Asset Purchase Agreement to CAA Buyer, LLC by an Assignment and Assumption Agreement dated December 15, 2010 ("Asset Assignment Agreement").  The business purpose of CAA Buyer, LLC was, among other things, to own and license the Assigned Marks.  On that same day, December 15, 2010, CAA Buyer, LLC changed its name to Command Arms Accessories, LLC, but was still registered as PA Entity 3996905.

---

[2] CAA Buyer, LLC is the former name of Command Arms Accessories, LLC (Pa entity 3996905).

On that same day, the name of the original Command Arms Accessories '764 was changed to CAA Liquidation, and then eventually dissolved on December 17, 2012.

12.    Since its founding in 2004, Plaintiff CAA Industries has designed, developed, and manufactured firearms accessories.

13.    CAA Industries has pushed innovation in the firearms industry, has invented a number of firearm tactical accessories that have become widely used and popular, and has defined industry standards.  All of CAA Industries products were designed by, and some patented by, Moshe Oz.

14.    CAA Industries ensures that its products meet very high quality and safety requirements and standards.

15.    CAA Industries markets and sells its products to law enforcement, armed services, and firearm hobbyists and enthusiasts around the world.

**The CAA Family of Marks**

16.    CAA Industries markets and sells its firearms accessories throughout the United States and in many other countries under mark RONI, U.S. Trademark Reg. No. 4,352,373, and several common law trademarks. Exh. 1.  Those marks have been, and continue to be, used directly by CAA Industries and/or used by its authorized U.S. distributor and/or retailers, which use inures to the benefit of Plaintiffs.

17.    Prior to December 2010, CAA Industries was named Tactical Arms, Ltd. and used the tradename and trademark CAA-TACTICAL in world-wide commerce, including U.S. interstate commerce, in connection with the sale of a wide variety of firearms accessories.

18.    Shortly after the Asset Assignment Agreement, CAA, LLC licensed the Assigned Marks to Tactical Arms, Ltd.  Tactical Arms, Ltd. changed its corporate name to CAA

Industries, Ltd. and then re-branded by using the tradename and trademark CAA INDUSTRIES, and using the Assigned Marks instead of the tradename and trademark CAA TACTICAL. CAA Industries, Ltd. eventually phased out the registered mark **CAA** and replaced it with the registered mark **CAA**, U.S. Reg. No. 4,352,407.

19.    Since at least as early as 2010, CAA Industries has continuously used the marks CAA, CAA INDUSTRIES and COMMAND ARMS ACCESSORIES in United States and foreign commerce to advertise, promote, and sell its firearms accessories, and to identify and distinguish its goods from the goods of other companies.

20.    In the firearms accessories industry, CAA is a well-known abbreviation for Command Arms Accessories.

21.    The mark **CAA** was continuously used in commerce by CAA Industries from January 2010 until 2016, when it was phased out and replaced with the marks ⬙ (the "Lion Head Mark") and ⬙ CAA (the "Lion Head Composite Mark") (collectively "Lion Head Marks")

22.    The Lion Head Marks were developed by an Israeli marketing firm, Dan Alexander & Co., in 2015 on behalf of CAA Industries.

23.    Since at least as early as 2016, CAA Industries has continuously used the Lion Head Marks in United States and foreign commerce to advertise, promote, and sell its firearms accessories, and to identify and distinguish its goods from the goods of other companies.

24.    On May 30, 2019, CAA Industries filed U.S. trademark appln. no. 88/453,007 ("the '007 Application") for the Lion Head Mark for use in connection with a wide variety of firearms accessories. The '007 Application is pending.

25.     On May 30, 2019, CAA Industries filed U.S. trademark appln. no. 88/453,586 ("the '586 Application") for the mark CAA for use in connection with firearms accessories.  The '586 Application is pending.

26.     CAA Industries' most popular and well-known products are pistol carbine conversion kits sold under the marks RONI and MICRO RONI, and their related and spin-off products (collectively the "RONI Products").  A pistol carbine conversion kit is a firearms accessory that enables a user to convert a pistol into a mini carbine (longer gun firearm) to offer better grip, stability, range, and accuracy.  The inventor, Moshe Oz, of the original RONI pistol carbine conversion kit named the device after his daughter, Roni.

27.     Since at least as early as 2010, CAA Industries has continuously used the mark RONI in United States and foreign commerce to advertise, promote, and sell its RONI Products, and to identify and distinguish its goods from the goods of other companies.

28.     CAA Industries owns U.S. Trademark Registration No. 4,352,373 ("the '373 Registration"), which grants CAA the exclusive right to use the mark RONI, or any confusingly similar mark (colorable imitation), in connection with "firearm accessories, namely, gunstocks, stock sets, grips for small arms, gun mounts, mounts for gun sights, mounts for bipod stands for firearms; pistol carbine conversions kits; small arms; airsoft guns not for recreational use; airsoft guns, namely, non-weapon replicas of firearms that use compressed air as the projectile; plastic airsoft BBs and plastic airsoft spheres for use as ammunition; rail systems; Picatinny rails; rail mount adaptors, firearm magazine holders; stock adaptors, telescope adaptors; pistol shell; shooting accessory, namely, an adjustable cheek piece, collapsible stock, hinged pistol housing held closed with moveable end caps with locking pins, muzzle shroud, finger guard, sling mounts, spare magazine holder, pistol cocking handle, removable folding forward grip, rails;

parts and fittings for weapons, namely, a 16" barrel, stock, and catcher," and in connection with related goods. Exh. 1.

29.    The application for the '373 Registration was filed on September 26, 2011, claiming priority to Israeli Trademark Application No. 239868 and claiming a first use date in United States commerce of January 19, 2010.  The mark was registered on the Principal Register on June 18, 2013.

30.    Since at least as early as 2016, CAA has continuously used the marks MICRO RONI and MICRO in United States and foreign commerce to advertise, promote, and sell its RONI Products, and to identify and distinguish its goods from the goods of other companies.

31.    On May 30, 2019, CAA Industries filed U.S. trademark appln. no. 88/453,619 ("the '619 Application") for the mark MICRO RONI for use in connection with firearms accessories and pistol to carbine conversion kits.  The '619 Application is pending.

32.    Since at least as early as 2016, CAA Industries has used a digital design pattern mark ("DDP Mark").  The DDP Mark was developed by an Israeli marketing firm, Dan Alexander & Co., in 2015 on behalf of CAA Industries.

33.    The DDP Mark has the appearance shown below and better seen in Exhibit 2.



34.    The DDP Marks consists of a series of interlocking rectangular or square shapes, which are colored either black, red, burnt orange, olive drab green or a darker green.  While there

are singular squares or singular rectangles of a color, most squares and rectangles are combined into larger shapes of a single color, thereby forming irregular, unidentifiable, single color shapes with linear edges (Irregular Shapes).  These Irregular Shapes interlock to create an Irregular Pattern.

35.    Since at least as early as 2016, CAA Industries has used the DDP Mark in United States and foreign commerce to advertise, promote, and sell its firearms accessories, and to identify and distinguish its goods from the goods of other companies.

36.    The DDP Mark and the marks CAA, COMMAND ARMS ACCESSORIES, RONI, MICRO RONI, MICRO, and the Lion Head Marks are collectively referred to as the "CAA Marks".

37.    As part of its efforts to create goodwill and consumer recognition of its firearms accessories, CAA Industries also developed a distinctive trade dress for use on the packaging of its products, its website, business cards, promotional literature and letterhead (the "CAA Trade Dress").  An example of the CAA Trade Dress is shown in photographs 1 and 2 of Exhibit 2.

38.    Specifically, the CAA Trade Dress includes one or more of the following elements described in paragraphs 39-48.

39.    CAA Industries used each of the CAA Marks in a unique way by combining unique colors, color combinations, fonts, arrangements of elements, and usage rules.

40.    CAA Industries uses the DDP Mark as a strip or band or edging on product packaging, business cards, banners, letterhead, and the CAA Website (defined below).

41.    The DDP mark uses the following unique combination of brand colors as defined on the Pantone color matching system: PMS 186 C; PMS 399 C; PMS 455 C; PMS 574 C; PMS 131C; white; and PMS Black C (the "Brand Colors").

42.     All advertising copy is set in DIN font.

43.     CAA Industries uses both a positive and negative version of the Lion Head Mark

show as follows:  (positive) and (negative.

44.     CAA Industries uses the Lion Head Mark in combination with a plurality of

horizontal stripes as shown below and better seen in Photographs 1 and 2 of Exhibit1:

45.     CAA Industries uses the Lion Head Mark on different product visuals as shown

below and follows:

.

46.     CAA Industries uses the Lion Head Mark superimposed on the DDP Mark as

shown below:

.

47.     CAA Industries follows a plurality of restrictions regarding usage of the mark

CAA and the Lion Head Mark (logos) including: use the positive (black) version of the logo on a

white background, and the negative (white) version of the logo on a black background; use the

positive (black) or negative (white) version of the logo on any of the Brand Colors backgrounds;

don't change the logo's orientation; don't change the logo colors; don't combine Brand Colors

together (logotype and background); don't outline the logo in any color; don't reconfigure or change the size or placement of any logo elements; don't bevel or emboss the logo; don't crop the logo in any way; don't present the logo in "outline only"; don't add "drop shadow effects to the logo; don't stretch or squeeze the logo to distort proportions; don't place the logo on a busy photograph or pattern that are not the DDP Mark; don't add "glow" effects to the logo; don't place the logo on colored backgrounds that are not the Brand Colors; don't put a white box around the logo when placed on a dark or busy background; and, don't color each letter in a different color.

48.     The mark CAA has the defined clear space area shown below:



49.     The Lion Head Composite Mark is used with the size relation shown below:



50.     These and numerous other elements of the CAA Trade Dress were designed by an Israeli marketing firm, Dan Alexander & Co., in or around 2015 on behalf of CAA Industries.

51.     The CAA Trade Dress is non-functional.

52.     Since at least as early as 2016, CAA Industries has continuously and extensively used, advertised, and promoted the CAA Trade Dress in foreign commerce and interstate commerce in the United States in connection with its firearms accessories.

53.    CAA Industries also owns several foreign registrations for one or more of the CAA Marks.

54.    Plaintiffs own the CAA Marks and the CAA Trade Dress.

55.    The CAA Marks are inherently distinctive.

56.    The CAA Trade Dress is inherently distinctive.

57.    Plaintiffs supervise, monitor, and control the quality of CAA Industries' firearms accessories bearing the CAA Marks and/or the CAA Trade Dress to ensure the products have a consistently high quality.

58.    Through CAA Industries' substantial marketing and advertising efforts, the CAA Marks and Trade Dress have become distinctive in the firearms industry and represent the stellar reputation and valuable goodwill of CAA Industries.

59.    Through CAA Industries' substantial marketing and advertising efforts, the CAA Marks and Trade Dress have become well-known in the firearms industry and represent the stellar reputation and valuable goodwill of CAA Industries.

60.    The CAA Marks and Trade Dress, and the extensive recognition and goodwill symbolized by them, are extremely valuable assets of CAA Industries.

61.    The CAA Marks represent CAA Industries' reputation as a producer and seller of top quality firearms accessories.

**The CAA Patents**

62.    CAA Industries' most popular and well-known products are the RONI Products. The original RONI pistol carbine conversion kit was invented by Moshe Oz prior to 2010 and is protected by two U.S. patents. CAA Industries spent thousands of hours and hundreds of thousands of dollars designing, developing and perfecting the RONI pistol carbine conversion

kit.

63.     The MICRO RONI conversion kit was also was invented by Moshe Oz prior to 2016.  CAA Industries spent thousands of hours and hundreds of thousands of dollars designing, developing and perfecting the MICRO RONI pistol carbine conversion kit.  The MICRO RONI accounts for about 80% of CAA Industries revenue.

64.     CAA Industries is the owner by assignment of the inventor, Moshe Oz, of U.S. Patent No. 8,887,432 ("the '432 Patent") entitled Handgun Converter.  The '432 Patent relates to a pistol carbine conversion kit.

65.     The '432 Patent is in force.

66.     The '432 Patent is valid and enforceable.

67.     CAA Industries is the owner by assignment of the inventor, Moshe Oz, of U.S. Patent No. 8,312,803 ("the '803 Patent") entitled Semi Automatic Pistol Slide Pull.  Exh. 3.  The '803 Patent relates to a slide pull for aiding in pulling a slide on a semi-automatic pistol, especially when installed in a pistol carbine conversion kit.

68.     The '803 Patent is in force.

69.     The '803 Patent is valid and enforceable.

70.     The RONI pistol carbine conversion kit and the MICRO RONI pistol carbine conversion kit are marked with the '432 Patent number and the '803 Patent number.

**The CAA Website**

71.     In or around late January 2016, CAA Industries launched a new website hosted at www.caagearup.com (the "CAA Website") to advertise and promote its firearms accessories in the United States and around the world.

72.     At great expense and effort, CAA Industries hired NGSoft Corporation

("NGSoft") in Israel, to design and create the CAA Website. During creation, NGSoft worked cooperatively with, and obtained instructions and approvals from, CAA Industries.

73.    A development agreement with NGSoft was executed by Eldad Oz on behalf of CAA Industries on or around March 26, 2015.

74.    The CAA Website went live around January 24, 2016 and was translated into both English and Hebrew. The contact e-mail address was initially info@caagearup.com for international sales, and infoUSA@caagearup.com for U.S. sales.

75.    From 2015 until around June 2018, CAA Industries spent substantial resources to maintain the CAA Website.

**Defendant's Infringing Activities**

76.    Defendant ME Technology is a distributor of firearms accessories.

77.    ME Technology was originally formed by Moshe Oz and Eldab Oz to distribute the products of CAA Industries in the United States. ME Technology, Inc. was formed on Agust 20, 2007 but was not operational until late 2009.

78.    Moshe Oz and Eldab Oz initially owned 100% of ME Technology but assigned a 51% ownership interest to a group of investors ("the Investors") in 2015.

79.    From 2009 until late 2010, ME Technology used the tradename and trademark EMA TACTICAL.

80.    In or around 2010, CAA Industries sub-licensed the Assigned Marks to ME Technologyy, which re-branded and began using the tradename CAA, instead of EMA TACTICAL, and using the mark CAA.

81.    In or around 2010, CAA Industries also licensed the mark **CAA** to ME Technology, which used the mark in commerce until around 2016.

82.    Consistent with CAA Industries' worldwide branding plan, in or around 2016, ME Technology phased out the mark **CAA** and replaced it with the mark **CAA** .

83.    For several years and until recently, ME Technology served as an authorized importer and distributor of CAA Industries' products in the United States via a license from CAA Industries, under which it imported, advertised, distributed, and sold genuine CAA Industries' products in the United States.  The license to use the CAA Marks extended only to genuine products manufactured by CAA Industries.

84.    Around August 2018, ME Technology began advertising and selling in the U.S. and globally a knock-off pistol carbine conversion kit ("the MCK") on the CAA Website.  ME Technology additionally branded the MCK with the marks CAA USA, MICRO, MCK and MICRO CONVERSION KIT ("the MCK Marks").  This occurred shortly after Eldad Oz retired from ME Technology and was no longer involved in the day-to-day operations of ME Technology.

85.    By selling the MCK on the CAA Website, ME Technology was also using all of the CAA Marks and the CAA Trade Dress in connection with this knock-off product.

86.    The MCK is not an authentic CAA Industries product.

87.    The MCK is a modified reproduction of CAA Industries' MICRO RONI pistol carbine conversion kits.  A comparison of the MCK and CAA's MICRO RONI pistol carbine conversion kit is shown in Exhibit 4.

88.    The MCK is designed to imitate the authentic MICRO RONI conversion kits.

89.    The MCK is unsafe, hazardous and dangerous to use.  Specifically, the MCK line of pistol housings does not include a trigger guard, which is a critical feature to prevent an unintended discharge of the firearm while mounted in the pistol housing.

90.     In a cease & desist letter dated June 5, 2019, CAA Industries advised ME Technology that the MCK line of pistol housings is unsafe, hazardous and dangerous since it does not include a trigger guard, which is a critical feature to prevent an unintended discharge of the firearm while mounted in the pistol housing.  The trigger guard is designed to prevent anything from inadvertently actuating the trigger.

91.     In the June 5, 2019 letter , CAA Industries also advised ME Technology that its authorization to sell CAA Industries products and license to use the CAA Marks extended only to genuine CAA Industries' products, and that ME's sale of inferior, dangerous, knock-off products is not authorized, licensed, or permitted.  Accordingly, ME Technology was advised that its use of the CAA Marks in connection with these products was unlawful.

92.     In the June 5, 2019 letter, CAA Industries expressly terminated ME Technology's authorization and/or license to import, advertise, distribute, and/or sell CAA Industries' products, or to use any of the CAA Marks.

93.     On July 9, 2019, ME Technology responded to CAA Industries' cease and desist letter and denied the allegations contained therein.  To date, ME Technology has refused to cease and desist its infringing activities.

94.     ME Technology is no longer an authorized importer or distributor of genuine CAA Industries' products, but continues to use the CAA Marks, the CAA Trade Dress, and the marks CAA USA, MICRO, and MICRO CONVERSION KIT (collectively "the Infringing Marks") without authorization.

95.     ME Technology has no other authorization, express or implied, to use any of the CAA Marks or Trade Dress.

96.     ME Technology's use of the Infringing Marks falsely suggests that ME

Technology's products are genuine CAA Industries' products and have the same properties, quality, and performance characteristics as CAA Industries' products.

97.     ME Technology is importing, advertising, distributing, and/or selling its products with the Infringing Marks in interstate commerce, including in the Southern District of New York.

98.     Since ME Technology is no longer an authorized distributor, its continued use of the Infringing Marks is likely to cause confusion, mistake, or to deceive consumers in the marketplace as to the source or origin of ME Technology's products, and/or as to the affiliation, sponsorship, or lack thereof, with or by CAA Industries.

99.     On information and belief, ME Technology is willfully and knowingly using the Infringing Marks even though it has been advised by CAA Industries that it is no longer authorized to use the CAA Marks or Trade Dress or sell CAA Industries' products.

100.     ME Technology continues to commercialize the MCK pistol carbine conversion kit using the Infringing Marks.

101.     As a result of ME Technology's acts and use of the Infringing Marks, CAA Industries has been injured by, *inter alia*,  diversion of sales from itself to ME Technology, by lessening of the goodwill of its marks, and/or by lessening of the goodwill its products enjoy with the buying public.

102.     The MCK directly infringes one or more of the claims of the '803 Patent.

103.     On information and belief, ME Technology was aware of the '803 Patent when it designed the MCK conversion kit.

104.     On information and belief, ME Technology was aware of the '432 Patent when it designed the MCK conversion kit.

105.    On information and belief, ME Technology designed the MCK conversion kit to avoid infringing the '432 Patent by omitting a trigger guard.

106.    On information and belief, ME Technology was not able to design the MCK conversion kit without including a slide pull to avoid infringing the '803 Patent.

107.    The MCK conversion kit infringes the '803 Patent because it includes an infringing slide pull.  A comparison of the slide pulls from the MCK and CAA's MICRO RONI pistol carbine conversion kit is shown in Exhibit 5.

108.    On information and belief, ME Technology is knowingly and intentionally infringing the '803 Patent.

109.    Because ME Technology was its exclusive U.S. distributor, CAA Industries provided ME Technology with access to the CAA Website for purposes of uploading and downloading the latest product, price, customer orders and other valuable commercial information.

110.    Around June 18, 2018, ME Technology reported to CAA Industries that the CAA Website was having technical problems.  ME Technology changed the website access credentials but told CAA Industries that ME Technology would address the technical problems and then return access of the CAA Website to CAA Industries.  Despite numerous requests over the next several months, ME Technology never returned access to the CAA Website to CAA Industries.

111.    ME Technology has misappropriated the CAA Website and its contents by changing the access credentials without permission from CAA Industries, and denying CAA Industries access to the CAA Website.

112.    ME Technology has used and continues to use the CAA Website and its content for its own purpose and profit to advertise and sell its unauthorized products and using the CAA

Marks.

113.    Now that ME Technology has misappropriated the CAA Website for its exclusive use, many statements on the CAA Website are no longer true as applied solely to ME Technology.

114.    ME Technology is making false and misleading statements of fact on the CAA Website that are material in that they are likely to influence the purchasing decisions of consumers for CAA Industries' and ME Technology's respective products.

115.    ME Technology is falsely representing that it was founded in 2004.

116.    ME Technology is falsely representing that it is a "long-established designer, developer and world class producer of modern tactical accessories, optics, tools and upgrades."

117.    ME Technology is falsely representing that it has "invented many modern tactical accessories that have become the benchmark for the firearm industry."

118.    The CAA Website is under ME Technology's possession and control, and continues to incorporate and feature the CAA Marks and Trade Dress or confusingly similar marks.

119.    As a result of being locked out of the CAA Website for around 6-8 months, CAA Industries was forced to create a new website, *www.caaindustries.com*, at great expense and effort to advertise and promote its products.

120.    On July 8, 2019, a representative from CAA Industries met with representatives from ME Technology and discussed, among other issues, the ongoing infringement.  However, no resolution of the infringement issues was negotiated.

121.    ME Technology's acts have caused, and continue to cause, irreparable harm to Plaintiffs and the public.  Plaintiffs have suffered irreparable harm to their business, reputation,

and goodwill, and, unless ME Technology is enjoined and restrained by this court, ME

Technology will continue in the activities alleged herein and as a result thereof, Plaintiffs will

continue to sustain irreparable harm to its business, reputation and goodwill.

122.    Plaintiffs have no adequate remedy at law.

123.    ME Technology's acts have been intentional, willful and with wanton disregard

for the rights of Plaintiffs.

**Count I**
**U.S. Trademark Reg. No. 4,352,373 - RONI**
**Federal Trademark Infringement under the Lanham Act**

124.    The allegations of the preceding paragraphs are repeated and incorporated herein

by reference.

125.    ME Technology's acts and use of the Infringing Marks, including its use of the

marks RONI and MICRO RONI, constitute trademark infringement under Section 32 of the

Lanham Act, 15 U.S.C. § 1114.

126.    U.S. Trademark Reg. No. 4,352,373 for the mark RONI entitles CAA Industries

to a presumption of ownership, validity, and exclusive rights to use the mark RONI in

connection with the goods/services named in the registration.

127.    ME Technology has used and is using the marks RONI and MICRO RONI, or

otherwise a reproduction, counterfeit, copy, or colorable imitation of the mark RONI on or in

connection with the sale, offering for sale, distribution, or advertising of competing products.

128.    ME Technology's unauthorized use of the marks RONI and MICRO RONI in

connection with selling, offering for sale, distributing, and advertising its products is likely to

cause confusion, or to cause mistake, or to deceive the public regarding the source of its

products.

**Count II**
**Mark – CAA**
**False Designation of Origin under the Lanham Act**

129.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

130.    ME Technology's acts and use of the Infringing Marks, including its use of the marks CAA, CAA USA, and the Lion Head Composite Mark, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

131.    Through its prior use of the marks CAA and COMMAND ARMS ACCESSORIES in foreign and interstate commerce in the United States, Plaintiffs possess senior rights to use the mark CAA in connection with firearms accessories.

132.    ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the mark CAA, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

133.    ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

134.    ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count III**
**Mark – RONI**
**False Designation of Origin Under the Lanham Act**

135.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

136.    ME Technology's acts and use of the Infringing Marks, including its use of the marks RONI and MICRO RONI, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

137.    Through its prior use of the marks RONI in foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the marks RONI in connection with firearm accessories.

138.    ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the mark RONI, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

139.     ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

140.    ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count IV**
**Mark – MICRO RONI**
**False Designation of Origin Under the Lanham Act**

141.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

142.    ME Technology's acts and use of the Infringing Marks, including its use of the marks RONI, MICRO RONI, and MICRO constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

143.     Through its prior use of the mark MICRO RONI in foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the mark MICRO RONI in connection with firearm accessories.

144.     ME Technology has used and is using the marks Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the mark MICRO RONI, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

145.      ME Technology's unauthorized use of the marks Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

146.     ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count V**
**Mark – MICRO**
**False Designation of Origin Under the Lanham Act**

147.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

148.     ME Technology's acts and use of the Infringing Marks, including its use of the marks MICRO and MICRO RONI, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

149.     Through its prior use of the mark MICRO RONI in foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the mark MICRO in connection with firearm accessories.

150.    ME Technology has used and is using the Infringing Marks , or otherwise a reproduction, counterfeit, copy, or colorable imitation of the mark MICRO RONI, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

151.    ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

152.    ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count VI**
**Mark – Lion Head Mark**
**False Designation of Origin Under the Lanham Act**

153.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

154.    ME Technology's acts and use of the Infringing Marks, including its use of the Lion Head Mark and Lion Head Composite Mark, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

155.    Through its prior use of the Lion Head Mark in foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the Lion Head Mark in connection with firearms and firearm accessories.

156.    ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the Lion Head Mark, on or in connection with the sale, offering for sale, distribution, or advertising of competing and inferior products.

157.     ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

158.     ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

### Count VII

### Mark – Lion Head Composite Mark 
### False Designation of Origin Under the Lanham Act

159.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

160.     ME Technology's acts and use of the Infringing Marks, including its use of the Lion Head Mark and the Lion Head Composite Mark, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

161.     Through its prior use of the Lion Head Composite Mark in foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the Lion Head Composite Mark in connection with firearms and firearm accessories.

162.     ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the Lion Head Composite Mark, on or in connection with the sale, offering for sale, distribution, or advertising of competing and inferior products.

163.     ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

164. ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count VIII**

**Mark – DDP Mark** 
**False Designation of Origin Under the Lanham Act**

165. The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

166. ME Technology's acts and use of the Infringing Marks, including its use of the DDP mark, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

167. Through its prior use of the DDP Mark in the foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the DDP Mark in connection with firearms accessories.

168. ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the DDP Mark, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

169. ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

170. ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count IX**
**CAA Trade Dress**
**False Designation of Origin Under The Lanham Act**

171.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

172.    ME Technology's acts and use of the Infringing Marks, including its use of the CAA Trade Dress, constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

173.    Through its prior use of the CAA Trade Dress in the foreign commerce and interstate commerce in the United States, Plaintiffs possess senior rights to use the CAA Trade Dress in connection with firearms accessories.

174.    ME Technology has used and is using the Infringing Marks, or otherwise a reproduction, counterfeit, copy, or colorable imitation of the CAA Trade Dress, on or in connection with the sale, offering for sale, distribution, or advertising of competing products.

175.     ME Technology's unauthorized use of the Infringing Marks in connection with selling, offering for sale, distributing, and advertising its products is likely to cause confusion, or to cause mistake, or to deceive the public regarding the source of its products.

176.     ME Technology's actions constitute a false designation of origin, a false description of goods, and a false representation that ME Technology's  goods are sponsored, endorsed, licensed, authorized by, affiliated with, or connected with Plaintiffs.

**Count X**
**Mark – CAA**
**Common Law Trademark Infringement and Unfair Competition**

177.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

178.    ME Technology's acts and use of the Infringing Marks, including its use of the marks CAA, CAA USA and the Lion Head Composite Mark in connection with firearms accessories, constitute common law trademark infringement of the mark CAA, as well as common law unfair competition.

179.    ME Technology's use of the marks Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

180.    ME Technology's use of the marks Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over CAA by misappropriating the valuable goodwill developed by Plaintiffs in the mark CAA.

### Count XI
### Mark – RONI
### Common Law Trademark Infringement and Unfair Competition

181.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

182.    ME Technology's acts and use of the Infringing Marks, including its use of the marks RONI and MICRO RONI, in connection with firearms accessories, constitute common law trademark infringement of the mark RONI, as well as common law unfair competition.

183.    ME Technology's use of the marks Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

184.    ME Technology's use of the mark Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the mark RONI.

**Count XII**
**Mark – MICRO RONI**
**Common Law Count XIII**
**Mark – MICRO**
**Common Law Trademark Infringement and Unfair Competition**

**Trademark Infringement and Unfair Competition**

185.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

186.    ME Technology's acts and use of the Infringing Marks, including its use of the marks RONI, MICRO RONI, and MICRO, in connection with firearms accessories, constitute common law trademark infringement of the mark MICRO RONI, as well as common law unfair competition.

187.    ME Technology's use of the marks Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

188.    ME Technology's use of the marks Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the mark MICRO RONI.

189.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

190.    ME Technology's acts and use of the Infringing Marks, including its use of the marks MICRO RONI and MICRO, in connection with firearms accessories, constitute common law trademark infringement of the mark MICRO, as well as common law unfair competition.

191.    ME Technology's use of the marks Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

192.    ME Technology's use of the marks Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the mark MICRO.

**Count XIV**
**Mark – Lion Head Mark**
**Common Law Trademark Infringement and Unfair Competition**

193.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

194.    ME Technology's acts and use of the Infringing Marks, including its use of the Lion Head Mark and Lion Head Composite Mark, in connection with firearms accessories, constitute common law trademark infringement of the Lion Head mark, as well as common law unfair competition.

195.    ME Technology's use of the Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

196.    ME Technology's use of the Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the Lion Head Mark.

## Count XV

### Mark – Lion Head Composite Mark 
### Common Law Trademark Infringement and Unfair Competition

197.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

198.    ME Technology's acts and use of the Infringing Marks, including its use of the marks CAA, CAA USA, the Lion Head Mark, and the Lion Head Composite Mark in connection with firearms accessories, constitute common law trademark infringement of the Lion Head mark, as well as common law unfair competition.

199.    ME Technology's use of the marks Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

200.    ME Technology's use of the marks Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the Lion Head Composite Mark.

## Count XVI

### Mark – DDP Mark 
### Common Law Trademark Infringement and Unfair Competition

201.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

202.    ME Technology's acts and use of the Infringing Marks, including its use of the mark DDP Mark, in connection with firearms accessories, constitute common law trademark infringement of the DDP mark, as well as common law unfair competition.

203.    ME Technology's use of the Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

204.    ME Technology's use of the Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the DDP Mark.

### Count XVII
### Common Law Trade Dress Infringement

205.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

206.    ME Technology's acts and use of the Infringing Marks, including its use of the mark CAA Trade Dress, in connection with firearms accessories, constitute common law trade dress infringement, as well as common law unfair competition.

207.    ME Technology's use of the Infringing Marks in connection with firearms accessories is likely to cause confusion among consumers as to the source of ME Technology's goods, or the sponsorship, affiliation, or lack thereof, of ME Technology by or with Plaintiffs.

208.    ME Technology's use of the Infringing Marks is being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misappropriating the valuable goodwill developed by Plaintiffs in the CAA Trade Dress.

### Count XVIII
### Mark – RONI
### Trademark Counterfeiting under the Lanham Act

209.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

210.    ME Technology's acts and use of the Infringing Marks, including its use of the mark RONI, constitute trademark counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d).

211.    Defendant, without authorization from CAA Industries, has and is continuing to use spurious designations that are identical to, or designations that are substantially indistinguishable from, the mark RONI in interstate commerce.

212.    The foregoing acts of ME Technology are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that ME Technology's products are genuine or authorized products of Plaintiffs.

213.    ME Technology has acted with knowledge of CAA Industries' ownership of the mark RONI, with deliberate intention or willful blindness to unfairly benefit from the goodwill inherent in the mark RONI.

214.    Defendant has used and continues to use the mark RONI in connection with various firearm goods.

**Count XIX**
**False Advertising under the Lanham Act**

215.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

216.    ME Technology's acts and use of the Infringing Marks, including representation and advertisements on the CAA Website, constitute false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

217.    ME Technology, in commercial advertising or promotion, has misrepresented the nature, characteristics, qualities, or geographic origin of ME Technology, its goods and/or Plaintiff's goods.

218.    ME Technology's advertisements falsely suggest that ME Technology's officers, owners, designers, and manufacturers have the same experience, credentials, education and/or reputation as CAA Industries' officers, owners, designers, and manufacturers.

219.    ME Technology's acts are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that ME Technology's products are equivalent to, derived from, or are improvements to CAA Industries' products.

220.    ME Technology's acts and representations are material since they are likely to influence the purchasing decisions of consumers for CAA Industries' and ME Technology's respective products.

221.    On information and belief, ME Technology has made the aforementioned false statements and misrepresentations without a basis in fact.

222.    ME Technology's acts are being done with the intent, purpose, and effect of procuring an unfair competitive advantage over Plaintiffs by misrepresenting its experience, credentials, education and/or reputation, and the quality, properties, and/or performance characteristics of ME Technology's products.

**Count XX**
**Domain Name Hijacking**
**Violation of Anticybersquatting Consumer Protection Act**

223.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

224.    ME Technology's acts, including misappropriation and use of the CAA Website and domain name *www.caagearup.com*, constitute a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

225.    ME Technology has used and is using a domain name that is confusingly similar with one or more of the distinctive CAA Marks with a bad faith intent to profit therefrom.

226.    While ME Technology was permissively in possession of the access credentials for the CAA Website and domain name *www.caagearup.com*, Defendant changed the access credentials without permission from Plaintiffs, modified the CAA Website, and began using the CAA Website for its own purpose and profit.

227.    ME Technology acted willfully and with the intent to convert the possession of the CAA Website and domain name *www.caagearup.com* into its own possession.

**Count XXI**
**Common Law Conversion**

228.    The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

229.    ME Technology's acts, including misappropriation and hijacking of the CAA Website and domain name *www.caagearup.com*, constitute conversion.

230.    ME Technology changed the access credentials to the CAA Website and domain name *www.caagearup.com* without permission from CAA Industries and has been using the CAA Website for its own purpose and profit.

231.    Despite CAA Industries' request, ME Technology has refused to provide ME Technology with the new access credentials for the CAA Website and domain name *www.caagearup.com*.

232.    ME Technology has acted willfully and with the intent to convert the possession of the CAA Website and domain name *www.caagearup.com* into its own possession.

## Count XXII
## Patent Infringement U.S. 8,312,803

233.    ME Technology' acts constitute patent infringement under 35 U.S.C. section 271.

234.    ME Technology has infringed, directly or indirectly, U.S. Patent No. 8,312,803, either literally or under the doctrine of equivalents, by making, using, selling or offering for sale in the U.S., and/or importing into the U.S., a pistol carbine conversion kit that embodies each element of at least one claim of the '803 Patent.

235.    ME Technology has infringed and continues to infringe the '803 Patent directly and indirectly by making, using, selling, and/or offering for sale in the U.S., and/or importing into the U.S., by way of example and not limitation, the MCK pistol carbine conversion kit, which includes a pistol slide pull that infringes at least one claim of the '803 Patent.

236.    ME Technology has profited by infringing the '803 Patent.

237.    CAA Industries has suffered and continues to suffer damages due to ME Technology's infringement of the '803 Patent.

238.    Prior to committing the unlawful act alleged herein, ME Technology had actual knowledge of the '803 Patent.  Thus, ME Technologies' acts have been willful and/or with a wanton and reckless disregard for CAA Industries' rights.

**WHEREFORE**, CAA prays for:

a)    an award of damages for infringement of the CAA Marks and CAA Trade Dress, including ME Technology's profits, and that such award by trebled due to ME Technology's willful and deliberate conduct;

b)      an award of damage for infringement of the '803 Patent, and that such award be trebled due to ME Technology's willful and deliberate conduct;

c)      a preliminary and permanent injunction enjoining Defendant from using the CAA Marks, the CAA Trade Dress or the mark MICRO in any manner in conjunction with firearms accessories;

d)      a preliminary and permanent injunction enjoining Defendant from making, using, selling, offering for sale in the United States, and/or importing into the United States, the MCK and/or the slide pull associated therewith;

e)      a preliminary and permanent injunction ordering the destruction of the infringing MCK and slide pull molds, or the transfer of the infringing MCK and slide pull molds to CAA Industries..

f)      a preliminary and permanent injunction ordering ME Technology to transfer ownership of the domain www.caagearup.com to CAA Industries;

g)      a preliminary and permanent injunction ordering ME Technology to transfer possession of the CAA Website back to CAA Industries;

h)      an award of costs and disbursements;

i)      an award of attorneys' fees;

j)      punitive damages due to the willful, wanton, and malicious conduct of Defendant;

k)      an award of statutory damages; and

l)      such other and further relief as the Court may deem just and proper.

## JURY TRIAL

Plaintiffs request a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues triable of right by a jury.

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC

Date: July 25, 2019

By: _____
Frank A. Mazzeo (FM0837)
Joseph M. Konieczny, Sr.(pro hac vice appl. to be filed)
808 Bethlehem Pike, Suite 200
Colmar, PA 18915
(215) 997-0248 (t)
(215) 997-0266 (f)
fmazzeo@rmkiplaw.com
jkonieczny@rmkiplaw.com

*Attorneys for Plaintiffs*