## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement") is made and entered into as of this 16th day of November, 2010, by and between Command Arms Accessories, LLC, a Pennsylvania limited liability company ("Seller"), by and through Edward A. Phillips as liquidating trustee ("Trustee"), and Eldad Oz, an individual by and through Tactical Arms, Ltd, an Israeli corporation ("Buyer").

## <u>RECITALS</u>

**WHEREAS,** Seller is engaged in the business of marketing, distributing and selling firearm accessories (the "Business");

**WHEREAS,** Trustee was appointed as the liquidating trustee of Seller pursuant to a Stipulation and Consent Order dated as of November 1, 2009 (the "Order"), a copy of which is attached hereto at <u>Exhibit A;</u>

**WHEREAS,** in connection with the Trustee's authority under the Order to liquidate and wind-up the affairs of Seller, Seller, by and through the Trustee, desires to sell certain of the assets of the Business and Buyer desires to acquire such assets on the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained, Buyer and Seller, intending to be legally bound, hereby agree as follows:

### *ARTICLE I*
### <u>SALE AND PURCHASE OF ASSETS</u>

*SECTION 1.1.* **Acquired Assets.** Subject to the terms and conditions of this Agreement, at the Closing (as defined herein), Buyer shall acquire from Seller, and Seller shall sell, assign, transfer and convey to Buyer, free and clear of all known security interests, liens, mortgages, leases, conditional sales contracts, attachments, judgments, claims and encumbrances of any kind or nature (collectively, "Encumbrances"), only those assets of the Business, specifically excluding the Excluded Assets (as defined herein), set forth below (collectively, the "Assets"):

a. All furniture, fixtures, computer hardware and related software (installed thereon), tools, machinery and other equipment and items of personal property (the "Personal Property"), including without limitation the Personal Property described on <u>Schedule 1.1(a);</u>

b. All of the molds described on <u>Schedule 1.1(b)</u>, except for the Colt Canada molds described in Section 1.1(c);

c. The Colt Canada molds described on <u>Schedule 1.1(c)</u>, subject to the use by Tactical Arms, Ltd. to fulfill the Colt Canada Order.

d.  All office and other supplies;

e.  All rights and interest of Seller in and to all Assumed Contracts (as defined in Section 1.3 hereof);

f.  All trade accounts receivable for the Business (collectively, "Receivables") and any and all claims and causes of action of Seller solely related thereto ("Receivables Claims");

g.  All governmental or other licenses, permits and authorizations relating to the conduct of the Business, to the extent transferable ("Permits");

h.  All customer lists and other records and information relating to past, present or prospective customers of the Business whether such lists and records are maintained in hardcopy, in a database or otherwise;

i.  All books, records and accounts, correspondence, sales records, supplier records, catalogs, plans, specifications and other records relating to the Business;

j.  All inventory, goods and other items held for sale in the ordinary course of the Business, including, without limitation the items listed on Schedule 1.1(j) ("Inventory"), which Schedule 1.1(j) shall be updated by Seller immediately prior to the Closing;

k.  The name, "Command Arms Accessories" and any patents, trademarks, trade names, copyrights and all other intellectual property rights of the Seller used in connection with or related to the Business listed on Schedule 1.1(k);

l.  All of Seller's rights in and to the following telephone numbers:  (866) 611-9576; (267) 803-1518); and

m.  The firearms described on Schedule 1.1(m), to the extent permitted by applicable law.

*SECTION 1.2.*  **Excluded Assets**.  Seller shall not sell and Buyer shall not purchase pursuant to Section 1.1 the following assets of Seller (collectively, the "Excluded Assets"):

a.  All bank and investment accounts, cash, cash equivalents and short-term investments;

b.  Any and all claims and causes of action of (i) the Trustee, including, without limitation, those against Craig Fisher and/or Eldad Oz, and (ii) the Seller, and any and all rights to the foregoing, whether arising from or related to the Business or otherwise, including, without limitation those claims and causes of action described on Schedule 1.2, but specifically excluding the Receivables Claims;

c.  Any and all agreements, contracts, and open purchase orders with Colt Canada, including, without limitation, those relating to the Colt Canada Order (collectively, the "Colt Canada Contract"); and

d.  Any assets or records of Seller which are not otherwise set forth in Section 1.1 hereof.

**SECTION 1.3.**   **Assumption of Contracts.**  On the Closing Date (as defined herein), Buyer shall assume and thereafter in due course fully satisfy those obligations arising after the Closing Date under the agreements, contracts, all open purchase orders, leases and commitments listed on Schedule 1.3, but specifically excluding the Colt Canada Contract (the "Assumed Contracts").  After the Closing Date, Seller shall have no liability or obligation under the Assumed Contracts with respect to any liability or obligation arising thereunder after the Closing Date.

**SECTION 1.4.**   **No Warranties.**

a.   SELLER AND BUYER ACKNOWLEDGE AND AGREE THAT THE PURCHASE PRICE FOR THE ASSETS HAS BEEN NEGOTIATED TO REFLECT THEIR CURRENT CONDITION, AND THAT BUYER HAS HAD AMPLE OPPORTUNITY TO DILIGENTLY EXAMINE AND INVESTIGATE TO ITS FULL SATISFACTION THE PHYSICAL AND REGULATORY CONDITION AND STATUS OF THE ASSETS.

b.   THE ASSETS ARE BEING SOLD, TRANSFERRED AND CONVEYED TO BUYER "AS IS", "WHERE IS" AND "WITHOUT FAULT".  EXCEPT AS SET FORTH IN SECTION 4.5 HEREOF, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE ASSETS, AND HEREBY EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, IN CONNECTION WITH THE ASSETS.

## ARTICLE II
## PURCHASE PRICE

**SECTION 2.1.**   **Purchase Price.**  The purchase price for the Assets (the "Purchase Price") is Six Hundred Fifty Thousand dollars, U.S. ($650,000.00), which shall be payable by Buyer to Seller at Closing by cashier's or certified check or wire transfer of immediately available funds.

**SECTION 2.2.**   **Deposit.**  The Seller, Trustee and Buyer acknowledge that Buyer has deposited $65,000.00 (10% of the Purchase Price) with counsel for the Trustee in connection with its bid submission for the purchase of the Assets as a down payment and good faith money deposit (together with any interest thereon, the "Deposit").  The Deposit is currently being held by the Trustee.  At the Closing, the Deposit shall be credited towards the Purchase Price.

**SECTION 2.3.**   **Proration of Certain Expenses.**  Operating expenses, including, without limitation telephone and utilities for the month (or other billing or payment period) in which the Closing occurs (the "Current Period"), which become payable for periods after the Closing shall be paid on a prorated basis by Buyer when due (the "Current Period Expenses").

**SECTION 2.4.**   **Taxes, Fees and Expenses.**  Buyer shall, at or as soon as practicable after Closing, pay all transfer, sales, documentary and similar taxes payable in connection with the transfer and conveyances to be made to Buyer hereunder.  In the event Seller must pay any

transfer, sales, documentary or similar taxes in connection with the transactions contemplated by this Agreement, Buyer shall promptly reimburse Seller for such payments.

## ARTICLE III
## THE CLOSING

**SECTION 3.1. Time and Place of Closing.** The closing of the transactions contemplated hereunder (the "Closing") shall be held at 10:00 a.m. local time on December 15, 2010 (the "Closing Date") at the offices of Saul Ewing LLP, Centre Square West, 1500 Market Street, 38th floor, Philadelphia, PA 19102-2186 or at such other time, date and place as the parties mutually agree.

**SECTION 3.2. Title Delivered at Closing.** At the Closing, Seller shall deliver to Buyer such instruments of sale and transfer as shall be effective to vest in Buyer good and marketable title to the Assets free and clear of any Encumbrances.

## ARTICLE IV
## SELLER'S REPRESENTATIONS AND WARRANTIES

Seller hereby represents and warrants to Buyer as follows:

**SECTION 4.1. Organization; Ownership.** Seller is a limited liability company duly formed and validly subsisting under the laws of the Commonwealth of Pennsylvania. Seller has the full power and authority to own the assets owned by it and to conduct the Business as currently conducted.

**SECTION 4.2. Authority and Binding Effect.** The Trustee, pursuant to the Order and by and through Seller, has the power and authority to execute, deliver and perform this Agreement, and the other instruments and documents required or contemplated hereby including, without limitation a bill of sale and one or more assignment and assumption agreements ("Seller's Transaction Documents"). Such execution, performance and consummation are authorized pursuant to the Order. This Agreement constitutes, and each of Seller's Transaction Documents shall constitute, the valid and binding obligations of Seller enforceable against Seller in accordance with their respective terms.

**SECTION 4.3. Absence of Conflicting Agreements.** To Seller's knowledge, neither the execution or delivery of this Agreement or any of Seller's Transaction Documents, nor the performance by Seller of the transactions contemplated hereby and thereby, conflicts with, or constitutes a breach of or a default under (a) any applicable law, rule, judgment, order, writ, injunction, or decree of any court currently in effect; (b) any applicable rule or regulation of any administrative agency or other governmental authority currently in effect; or (iii) any agreement, indenture, contract or instrument to which Seller is a party or by which it or any of its assets are bound.

**SECTION 4.4. Governmental Authorization.** Other than as may be required by the Order, the execution, delivery and performance of this Agreement by Seller by and through the Trustee, and the consummation of the transactions contemplated hereby, do not and shall not require any consent, approval or action by or in respect of, or any declaration, filing or

registration with, any government, court, regulator or administrative agency or commission, or other governmental authority, agency or instrumentality, whether federal, state or local.

**SECTION 4.5.** **Title to the Assets**. All of the Assets are owned by Seller. Except for the Encumbrances listed and described on Schedule 4.5, if any, all of which shall be satisfied, terminated and/or discharged by Seller on or before the Closing Date, Seller has good and marketable title to all such Assets, subject to no Encumbrance or restraint on transfer whatsoever.

**SECTION 4.6.** **Warranties Exclusive.** Except as expressly provided in Sections 4.1 through 4.5 hereof, Seller makes no representations or warranties with regard to the Assets or the Business or to any other matter whatsoever regarding the transactions contemplated herein. Buyer acknowledges that it is intimately familiar with the affairs of the Business, has conducted a thorough and diligent investigation thereof and is relying solely on such investigation and not upon any representation, either oral or written, that is not specifically contained in this Agreement.

## ARTICLE V
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller as follows:

**SECTION 5.1.** **Organization.** Buyer is a corporation, duly formed, validly existing and in good standing under the laws of Israel and has the full power and authority to make and perform this Agreement and to consummate the transaction contemplated herein.

**SECTION 5.2.** **Authority and Binding Effect**. Buyer has the full power and authority to execute, deliver and perform this Agreement, one or more assignment and assumption agreements and the other instruments and documents required or contemplated hereby ("Buyer's Transaction Documents"). Such execution, performance and consummation have been duly authorized by all necessary parties. This Agreement constitutes, and each of Buyer's Transaction Documents shall constitute, the valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**SECTION 5.3.** **Absence of Conflicting Agreements**. Neither the execution or delivery of this Agreement or any of Buyer's Transaction Documents, nor the performance by Buyer of the transactions contemplated hereby and thereby, conflicts with, or constitutes a breach of or a default under (a) any applicable law, rule, judgment, order, writ, injunction, or decree of any court currently in effect; (b) any applicable rule or regulation of any administrative agency or other governmental authority currently in effect; or (c) any agreement, indenture, contract or instrument to which Buyer is a party or by which it or any of its properties or assets is bound.

**SECTION 5.4.** **Financial Capability.** Buyer has, as of the date hereof, and will continue to maintain through Closing, sufficient funds available to pay the Purchase Price and otherwise to perform its obligations under this Agreement. Buyer has provided to Trustee a copy of documentation/information evidencing its financial capability to consummate the transactions contemplated hereunder and/or such other financial information as requested by the Trustee.

## ARTICLE VI
## OBLIGATIONS OF THE PARTIES UNTIL CLOSING

**SECTION 6.1.  Conduct of Business Pending Closing**.  Between the date of this Agreement and the Closing, Seller shall conduct the Business solely in the ordinary course of business, as conducted by the Trustee since the issuance of the Order.

**SECTION 6.2.  Cooperation; Further Assurances.**  Subject to the terms and conditions herein provided, each of the parties hereto shall use its reasonable best efforts to take, or cause to be taken, all actions necessary, proper and advisable to consummate and make effective the transactions contemplated by this Agreement, including to obtain all necessary consents and approvals of third parties or governmental agencies and to satisfy, or cause to be satisfied, the conditions precedent to the obligations of the other party set forth herein.

## ARTICLE VII
## CONDITIONS PRECEDENT TO BUYER'S OBLIGATIONS

Unless waived by Buyer, Buyer's obligation to consummate the purchase of the Business and Assets is subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

**SECTION 7.1.  Representations and Warranties**.  The representations and warranties of Seller contained in this Agreement shall be true and correct in all material respects at and as of the date hereof and on the Closing Date as though such representations and warranties were made at and as of such time, except to the extent affected by the transactions herein contemplated.

**SECTION 7.2.  Performance of Covenants**.  Seller shall have performed or complied with each of the agreements and covenants required by this Agreement to be performed or complied with by Seller prior to or at the Closing.

**SECTION 7.3.  Legal Matters**.  No suit, action, investigation, or legal or administrative proceeding shall have been brought by any person that questions the validity or legality of this Agreement or the transactions contemplated herein.

**SECTION 7.4.  Assets Transferred at Closing; Closing Documents.**  Seller shall have delivered or caused to be delivered to Buyer possession of the Assets (or the right to obtain possession on demand), free and clear of all Encumbrances and otherwise in accordance with all of the terms and conditions of this Agreement, together with such instruments of sale and transfer reasonably requested by Buyer, including without limitation, the bill of sale and one or more assignment and assumption agreements.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO SELLER'S OBLIGATIONS

Unless waived by Seller, Seller's obligation to consummate the sale of the Business and the Assets is subject to the fulfillment, prior to or at the Closing, of each of the following conditions:

**SECTION 8.1.  Representations and Warranties**.  The representations and warranties of Buyer contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date as though such representations and warranties were made at and as of such time, except to the extent affected by the transactions herein contemplated.

**SECTION 8.2.  Performance of Covenants**.  Buyer shall have performed or complied with each of the agreements and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing.

**SECTION 8.3.  Purchase Price**.  Buyer shall have delivered to Seller the Purchase Price (less the Deposit), which shall be payable to Seller by cashier's or certified check or wire transfer of immediately available funds.

**SECTION 8.4.  Consents**.  Buyer shall have obtained the consent of all parties necessary for the consummation of the transactions contemplated herein, including but not limited to all parties whose consent is necessary for the valid assignment of the Assumed Contracts to Buyer.

**SECTION 8.5.  Legal Matters**.  No suit, action, investigation, or legal or administrative proceeding shall have been brought by any person that questions the validity or legality of this Agreement or the transactions contemplated thereby.

**SECTION 8.6.  Other Documents**.  Buyer shall have furnished Seller with all other documents, certificates and other instruments required to be furnished to Seller by Buyer pursuant to the terms of this Agreement or reasonably requested by Seller to be furnished.

## ARTICLE IX
## TERMINATION; RETURN OF DEPOSIT

**SECTION 9.1.  Termination**.  This Agreement may be terminated and the transactions contemplated hereby abandoned:

  a.  by mutual consent of Buyer and Seller at any time prior to the Closing for any reason;

  b.  by written notice from Buyer to Seller (i) if a material breach by the Seller of any of its representations or any of the warranties or agreements contained in this Agreement occurs and such material breach is not cured within five (5) business days from the date of receipt of written notice thereof provided from Buyer to Seller; or (ii) if the conditions set forth in Article 7 have not been satisfied on or before Closing, unless expressly waived by Buyer; provided, however, that the right to terminate this Agreement under this Section 9.1(b) shall not be available to Buyer if a breach by Buyer of any of its representations, warranties or agreements contained in this Agreement has been the cause of or resulted in the failure of the condition to occur; or

c.   by written notice from Seller to Buyer (i) if a material breach by Buyer of any of its representations, warranties or agreements contained in this Agreement occurs and such material breach is not cured within five (5) business days from the date of receipt of written notice thereof provided from Seller to Buyer; or (ii) if the conditions set forth in Article 8 have not been satisfied on or before Closing, unless expressly waived by Seller; provided, however, that the right to terminate this Agreement under this Section 9.1(c) shall not be available to the Seller if a breach by the Seller of any of its representations, warranties or agreements contained in this Agreement has been the cause of or resulted in the failure of the condition to occur.

### SECTION 9.2.  Return of Deposit.

a.   Upon termination of this Agreement pursuant to Section 9.1(a) or 9.1(b) hereof, Seller shall promptly, but in any event within five (5) days after the effective date of such termination, return the Deposit to Buyer.  The return of the Deposit to Buyer shall be the sole and exclusive remedy of Buyer, and Buyer shall not be entitled to any other amounts for damages, losses, or payments from Seller, and Seller shall have no further obligation or liability of any kind to Buyer or any third party on account of this Agreement.

b.   Upon termination of this Agreement pursuant to Section 9.1(c) hereof, Seller shall be entitled to retain the Deposit.  Seller's retention of the Deposit is in addition to, and not in lieu of, any and all other rights or legal remedies to which Seller is entitled.

### ARTICLE X
### OBLIGATIONS OF PARTIES AFTER CLOSING

### SECTION 10.1.  Discharge of Liabilities.  Buyer shall pay and perform all of its liabilities and obligations with respect to the Assumed Contracts that accrue after Closing as and when the same become due and payable.

### SECTION 10.2.  Business Name.  After the Closing, Seller shall cease all use of the name "Command Arm Accessories" and shall execute all documents and instruments reasonably requested and prepared by Buyer as necessary or appropriate to allow Buyer to use such name.

### SECTION 10.3.  Access to Information.

a.   The parties acknowledge that after Closing, Trustee may need access to information or documents in the control or possession of Buyer for the purposes of (i) liquidating and winding-up the affairs of Seller, (ii) complying with any and all applicable statutes, ordinances, codes, rule and regulations, and (iii) the prosecution or defense of claims and causes of action. Accordingly, Buyer shall keep, preserve and maintain in the ordinary course of business, and as required by applicable law, all books, records and accounts, correspondence, sales records, supplier records, catalogs, plans, specifications and other records relating solely to the Business (collectively, the "Records") until the later of (i) two (2) years from the Closing Date or (ii) the expiration of all applicable statutes of limitations or extensions thereof.

b.   After Closing, Buyer shall cooperate fully with, and make available for inspection and copying by Trustee and its employees, agents, counsel and accountants, upon written request and

at the expense of Trustee, the Records to the extent reasonably necessary to facilitate the purposes set forth in Section 10.3(a) above.

c.  For a period of two (2) years following the Closing Date, or for such shorter period of time as Seller may request, at any time, in writing upon ten (10) days prior notice to Buyer, Buyer shall provide to Trustee space at such place or places where the Records are housed/maintained, reasonably sufficient to permit Trustee and its employees, agents, counsel and accountants to engage in all activities related to the liquidation and winding-up of the affairs of Seller, and at no cost to Seller; provided, however, that Buyer shall be permitted to structure such arrangement in a manner that will not materially affect Buyer's ability to operate its business following the Closing.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**SECTION 11.1.  Survival of Representations and Warranties**.  All representations and warranties made by each party in this Agreement or in any agreement, Schedule, Exhibit, certificate, document or list delivered by any such party pursuant hereto shall terminate as of the Closing.

**SECTION 11.2.  Costs and Expenses**.  Except as expressly otherwise provided in this Agreement, each party shall bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby.

**SECTION 11.3.  Benefit and Assignment.**  This Agreement binds and inures to the benefit of each party hereto and their respective successors and proper assigns.  Upon prior written notice to and consent by the Trustee, which consent may be granted or denied in Trustee's sole discretion, Buyer shall have the right prior to Closing to assign its rights and obligations under this Agreement, in whole or in part, to a successor, subsidiary or affiliate of Buyer or to designate any of such parties to exercise any of the rights or to perform any of the obligations of Buyer hereunder.

**SECTION 11.4.  Entire Agreement; Effect and Construction.**  This Agreement, the Exhibits and Schedules hereto embody the entire agreement and understanding of the parties with regard to the subject matter hereof and supersede any and all prior agreements, arrangements and understandings relating thereto.  The captions used herein are for convenience only and shall not control or affect the meaning or construction of the provisions of this Agreement.  This Agreement may be executed in one or more counterparts, and all such counterparts shall constitute one and the same instrument.

**SECTION 11.5.  Waiver, Discharge. etc**.  This Agreement shall not be released, discharged, abandoned, changed or modified in any manner, except by an instrument in writing executed by or on behalf of each of the parties hereto by their duly authorized officer or representative.  The failure of either party to enforce at any time any of the provisions of this Agreement shall in no way be construed to be a waiver of any such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of either party thereafter to

enforce each and every such provision.  No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.

SECTION 11.6.  **Modification.**  No modification or amendment to this Agreement shall be effective unless made in a writing signed by the parties hereto.

SECTION 11.7.  **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to any rules relating to the choice or conflict of laws.

SECTION 11.8.  IN WITNESS WHEREOF, each of the parties hereto has executed this Agreement as of the day and year first above written.

BUYER:

Tactical Arms, Ltd.

By: _____
Name: Eldad Oz
Title: Partner

SELLER:

COMMAND ARMS ACCESSORIES, LLC

By: _____
Edward A. Phillips
Liquidating Trustee

# EXHIBIT A

## STIPULATION AND CONSENT ORDER

(See Attached)

## Schedule 1.1(a)

## Personal Property

| Item | Description |
|---|---|
| Computer Equipment | 5 Dell System Units and related software (installed thereon) |
| Apple iMac | Core 2 Duo 2.66 24-Inch - Model Number: A1225 and related software (installed thereon) |
| 2 Printers | HP Laser Jet 1020 |
| Casio Projector | Casio XJ-S43 Super Slim XGA DLP Projector |
| NetSuite Operating System | Software and related Service Agreement for use of the software |

## Schedule 1.1(b)

## Molds (Other than Colt Canada)

| Item # | Description | # of molds | Location |
|---|---|---|---|
| SST1/2 | Saddle stock | 2 | Ultraplast |
| MPS | Magazine holder for CBS | 2 | Rebling Plastics |
| UFH | 5 position flashlight holder | 2 | Ultraplast |
| SRS/ARS | Sniper stock | 6 | Ultraplast |
| UPG16/47 | Rubberized pistol grip | 3 | Ultraplast |
| MLU556/762 | Magazine loader/unloader | 2 | Ultraplast |
| ML556 | Magazine loader | 1 | Ultraplast |
| FGA | Flashlight grip holder | 3 | Ultraplast |
| PRFCS | Side rail for Buttstock | 1 | Rebling Plastics |
| MMC | Magazine dust cover | 1 | Schubert Plastics |
| ACP | Adjustable cheek rest | 2 | Ultraplast |
| | | | |

### Schedule 1.1(c)

### Colt Canada Molds

| Item # | Description | # of Molds | Location |
|--------|-------------|------------|----------|
| CBS | Collapsible butt stock | 4 | Rosenshine |

## Schedule 1.1(g)

### Permits

None

## Schedule 1.1(j)

### Inventory

(See Attached)

## Schedule 1.1(k)

## Intellectual Property

Patents:

| Application No. | Patent No. | Title | Comments |
|---|---|---|---|
| 11/818,587 | 7,640,688 | ADJUSTABLE CHEEK REST AND ACCESSORY RAIL FOR FIREARMS | Assignment filed |
| 11/974,046 | n/a | PIVOTABLE ACCESSORY MOUNT | Assignment filed |

Trademarks (Registered marks only):

| Registration/Application No. | Mark Name | Comments |
|---|---|---|
| 3559649 | CAA COMMAND ARMS ACCESSORIES (and Logo) | Registration Date: January 13, 2009; First use : July, 19 2005; Filing date September 5, 2007 |

URLs:

Commandarms.com

## Schedule 1.1(m)

### Firearms

| Description | Quantity | Serial Number |
|---|---|---|
| Remington 870 | 2 | AB597496M<br>AB597479M |
| AK47 | 4 | SAB1804-80<br>AC2824-83<br>AL0686-81<br>8704713 |
| AR15s | 2 | Model CAA-01 Serial 0001<br>Model CAA-02 Serial 0001 |
| XD Pistol | 1 | US627523 |
| Mossberg 500 | 1 | AT059377 |
| SKS Rifle | 1 | 3224545 |

**Schedule 1.2**

**Excluded Assets**

<u>Civil Action No. 2:10-cv-588-L:  PHILLIPS v. Eldad Oz, Tactical and EMA Tactical</u>:

Trustee brought this action seeking injunctive relief and monetary damages for Defendants' alleged misappropriation of CAA property, proprietary rights and interests and confidential business information, and diversion of CAA customers and business opportunities.

<u>Civil Action No. 2:10-cv-782-LDD: PHILLIPS v. Tdi Lakota Holdings LLC and David Oz</u>:

Trustee brought this action against Defendants seeking injunctive relief and monetary damages for Defendants' alleged disparaging misrepresentations and diversion of CAA customers and business opportunities.

**Schedule 1.3**

**Assumed Contracts**

| Customer | Description | Attachment |
|---|---|---|
| Arizona Tactical | Future order for 430 SVG's | Page 1 |
| Cabela's | Vendor Agreement | Page 2-7 |
| Sportsman's Guide | Vendor Agreement | Page 8-26 |

See Attached

**Schedule 4.5**

**Encumbrances**

None