ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/31/19
```

COMMAND ARMS ACCESSORIES, LLC and
CAA INDUSTRIES, LTD.,

                              Plaintiffs,

            - against -                        19 Civ. 6982 (LLS)

ME TECHNOLOGY INC.,                            **OPINION & ORDER**

                              Defendant.

        Plaintiffs Command Arms Accessories, LLC and CAA

Industries, Ltd. move under Fed. R. Civ. P. 65(a) for an order

preliminarily enjoining Defendant ME Technology Inc. from

infringing Plaintiffs' trademark and patent rights in connection

with sales of firearm accessory products.

        Defendant ME Technology Inc. moves to transfer this action

to the Southern District of Florida.

        For the following reasons, Plaintiffs' motion for

preliminary injunction is denied, and Defendant's motion to

transfer is granted.

                              **BACKGROUND**

        Moshe Oz and Eldad Oz established and owned several firearm

accessory companies that have operated under several names.

        Defendant ME Technology, Inc. ("ME Technology") was formed

by Moshe and Eldad on August 20, 2007.  It sells firearm

accessories in the U.S. market and does business under the

initials CAA USA.  It is a New York corporation but its

headquarters and sole place of business is located in Pompano
Beach, Florida.

Plaintiff CAA Industries, Ltd. ("CAA Industries") was
formed by Moshe and Eldad on September 19, 2007.  It designs,
develops, and produces firearm accessories in Qiryat Gat,
Israel.  Its previous name was Tactical Arms, Ltd.

Plaintiff Command Arms Accessories, LLC ("Command LLC") is
a Pennsylvania limited liability company formed by Moshe and
Eldad on December 10, 2010.  Its previous name was CAA Buyer,
LLC.

Eldad had also formed another company in 2005 called
Command Arms Accessories, LLC (the predecessor company to
Command LLC), which on November 16, 2010 transferred its assets
to the other plaintiff in this case (CAA Industries, Ltd., then
named Tactical Arms, Ltd.) and was dissolved in 2012.  The
transferred assets included the name "Command Arms Accessories"
and patents, trademarks, trade names, copyrights and other
intellectual property Command Arms Accessories, LLC had used in
its business.  They cover two patents ("ADJUSTABLE CHEEK REST
AND ACCESSORY RAIL FOR FIREARMS" and "PIVOTABLE ACCESSORY
MOUNT"), one registered trademark ("CAA COMMAND ARMS ACCESSORIES
(and Logo)"), and the website URL "Commandarms.com."

On December 15, 2010, plaintiff CAA Industries (still named
Tactical Arms, Ltd.) assigned all the rights it obtained under

-2-

the Asset Purchase Agreement to the present plaintiff Command LLC (then named CAA Buyer, LLC).

As of that date, Moshe and Eldad owned the three parties CAA Industries, Command LLC, and ME Technology.  In January of 2015, Moshe and Eldad sold 51% of both CAA Industries and ME Technology to an otherwise unrelated and uninvolved investment company named Sky of Blue.[1]  Moshe remains the president, and both brothers are directors of CAA Industries.

<u>The Contested Trademarks and Trade Dress</u>

ME Technology was the exclusive U.S. distributor of the products CAA Industries manufactured in Israel.

One of the parties' most popular products was a pistol carbine conversion kit bearing the marks "RONI" or "Micro RONI." A pistol carbine conversion kit is a firearms accessory that enables a user to convert a pistol into a mini carbine, or a longer firearm, for improved grip, stability, range, and accuracy.  The Micro RONI is a newer version of the RONI with improved ergonomics and a lower weight, size, pistol insertion time, and price.

The mark "RONI" is registered by Tactical Arms Ltd. (CAA Industries' former name) with the United States Patent and Trademark Office.

---

[1] The anomaly, of course, is that Moshe and Eldad continue to own 49% of each of plaintiff CAA Industries and defendant ME Technology.

In 2015, an advertising firm created new trademarks for CAA Industries and ME Technology to use.  The "Soldier" mark was replaced with the "Lion Head" and "Lion Head Composite" marks.  A Digital Design Pattern ("DDP") of interlocking rectangles of different colors was also adopted as a mark.

The advertising firm developed new trade dress for use on the companies' packaging, website, business cards, promotional literature, and letterhead, some of which are shown below ("CAA trade dress").



Additionally, a web designer produced an online platform for direct internet sales at www.CAAGearUp.com.

In 2018, ME Technology began producing and selling its own new product called the MCK pistol carbine conversion kit.

Apparently, that was the first occasion on which ME Technology handled products competitive with those it was selling for CAA Industries in the U.S.  CAA Industries regarded the products ME Technology was producing and distributing as inferior and representing a dilution of ME Technology's dedication to CAA Industries' products.

On June 15, 2019, CAA Industries sent ME Technology a letter stating,

> In the past, while ME Technology was distributing and selling genuine CAA Industries products, ME Technology used the CAA Marks in the United States by permission from CAA Industries. Such permission was extended only to genuine CAA Industries' products. However, now that ME Technology is selling inferior, dangerous knock-off products such as the MCK line, ME Technology's use of the CAA Marks is without permission and unlawful. You are hereby notified that CAA Industries expressly revokes and terminates any permission or implied license ME Technology may have been given in the past to use the CAA Marks.

ME Technology continues to offer its own MCK conversion kit and CAA Industries products, and on August 27, 2019 Plaintiffs filed their motion for preliminary injunction, claiming that violates their trademark and patent rights.

On October 10, 2019, ME Technology moved for transfer of this action to the Southern District of Florida, which will be addressed later in this opinion.

## DISCUSSION

### Plaintiffs' Motion for Preliminary Injunction

Plaintiffs claim that ME Technology is infringing their

trademark rights by using "CAA," "COMMAND ARMS ACCESSORIES,"
"RONI," "Micro RONI," "Micro," the Lion Head mark, the Lion Head
Composite mark, the DDP mark, "GEAR UP," (collectively, "CAA
marks") and CAA trade dress on product packaging, brochures, and
the website www.CAAGearUp.com without authorization.  CAA
Industries claims that ME Technology's MCK pistol carbine
conversion kit infringes CAA Industries' U.S. Patent No.
8,312,803 ('803) "semi automatic pistol slide pull" patent.
Plaintiffs also claim that ME Technology violates the
Anticybersquatting Consumer Protection Act in its use of the CAA
website at the domain name www.CAAGearUp.com.

Therefore, Plaintiffs CAA Industries and Command LLC seek
an order enjoining ME Technology from (1) using any of the CAA
marks and trade dress in connection with firearm accessories,
(2) making or selling the MCK conversion kit or any product that
infringes the '803 patent, and (3) using the website domain name
www.CAAGearUp.com in connection with any of its websites.

Seeking a preliminary injunction, they must demonstrate
infringement causing "(1) irreparable harm and (2) either (a) a
likelihood of success on the merits, or (b) sufficiently serious
questions going to the merits of its claims to make them fair
ground for litigation, plus a balance of the hardships tipping
decidedly in favor of the moving party."  Oneida Nation of New
York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (citation and

internal quotation marks omitted).  "Additionally, the moving
party must show that a preliminary injunction is in the public
interest."  Id.

    To prevail on a claim of trademark infringement, "a
plaintiff must show (1) that it has a valid mark that is
entitled to protection under the Act, and (2) that use of the
defendant's mark infringes, or is likely to infringe, the mark
of the plaintiff."  Estee Lauder Inc. v. The Gap, Inc., 108 F.3d
1503, 1508 (2d Cir. 1997).  Thus, Plaintiffs must first show
that they own the contested trademarks and trade dress.  ME
Technology challenges Plaintiffs' ownership.

    Plaintiffs contend that they own the registered "RONI" mark
and the unregistered "CAA," "COMMAND ARMS ACCESSORIES," "Micro
RONI," "Micro," Lion Head, Lion Head Composite, DDP, and "GEAR
UP" marks and CAA trade dress in two ways.  First, they claim
that Tactical Arms, Ltd. in 2010 purchased the "CAA" and
"COMMAND ARMS ACCESSORIES" marks from the predecessor Command
Arms Accessories, LLC under the Asset Purchase Agreement, and
then assigned them to Command LLC under the Asset Assignment
Agreement.  Second, they claim that CAA Industries owns common
law rights to the registered marks because it was the first
party to adopt and continuously use them in commerce.

    With respect to the first contention, ME Technology denies
that the assets CAA Industries purchased and then assigned to

-7-

Command LLC included the "CAA" and "COMMAND ARMS ACCESSORIES" marks.

The Asset Purchase Agreement states that the nonparty Command Arms Accessories, LLC "shall sell, assign, transfer and convey to" Tactical Arms, Ltd. "The name, 'Command Arms Accessories' and any patents, trademarks, trade names, copyrights and all other intellectual property rights of the Seller used in connection with or related to the Business listed on Schedule 1.1(k)."  Pls. Ex. 13 § 1.1(k).

It appears that the sale of the name, "Command Arms Accessories," standing alone, identifies the business. Plaintiffs say it also comprises the intellectual property rights of the company, and thus simultaneously transfers them. That seems unlikely to be the case, especially since the rest of the sentence specifically and separately addresses those intellectual property rights, and specifies that they are listed on an attached schedule.

Plaintiffs argue that the language "all other intellectual property rights of the Seller used in connection with or related to the Business listed on Schedule 1.1(k)" refers to all intellectual property rights, even those not listed on Schedule 1.1(k).  That is also unlikely, as the language specifically refers to Schedule 1.1(k), which lists each patent, trademark, and website URL transferred to Tactical Arms, Ltd.  There is

only one trademark listed on Schedule 1.1(k):

| Registration/Application No. | Mark Name | Comments |
|---|---|---|
| 3559649 | CAA COMMAND ARMS ACCESSORIES (and Logo) | Registration Date: January 13, 2009; First use: July 19, 2005; Filing date September 5, 2007 |

Id. Schedule 1.1(k).  The registration's description of that

trademark states, "The mark consists of the design of a male

figure with a gun to the right of the letters 'CAA'."  Pls. Ex.

27.  It does not refer to the "CAA" and "COMMAND ARMS

ACCESSORIES" word marks, except to state that "No claim is made

to the exclusive right to use 'ARMS ACCESSORIES', apart from the

mark as shown."  Id.

Int. Cls.: 9 and 13
Prior U.S. Cls.: 2, 9, 21, 23, 26, 36 and 38
United States Patent and Trademark Office     Reg. No. 3,559,649
                                              Registered Jan. 13, 2009
TRADEMARK
PRINCIPAL REGISTER



That mark's registration was cancelled as of August 14,

2015, and both parties state that it is "abandoned."  Pls. Br.

at 23; Def. Br. at 21.  Command LLC's first contention of

ownership of the "CAA" and "COMMAND ARMS ACCESSORIES" word marks

under the Asset Purchase and Assignment Agreements lacks support

sufficient to raise a litigable issue.

With respect to Plaintiffs' second argument that CAA

Industries owns common law trademark rights, ME Technology

denies there are any such rights.

The Lanham Act "prohibits the infringement of unregistered, common law trademarks." Time, Inc. v. Petersen Publ'g Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999). "Common law trademark rights derive from 'initial appropriation and use [ ] accompanied by an intention to continue exploiting the mark commercially.'" Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 418 (2d Cir. 2018) (quoting La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974)) (omission in original). "To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." Jean Patou, 495 F.2d at 1271-72 (citation omitted).[2]

CAA Industries states that it has used the "CAA" mark since 2007; the "RONI" mark "since at least as early as January 2010"; the "Gear Up" mark since December of 2015; the "Micro RONI" mark "since at least as early as January 2016"; and the Lion Head mark, Lion Head Composite mark, DDP mark, and CAA trade dress

---

[2] Even with regard to the registered "RONI" mark, Plaintiffs must demonstrate initial appropriation and bona fide usage. See Blue Planet Software, Inc. v. Games Int'l, LLC, 334 F. Supp. 2d 425, 436 (S.D.N.Y. 2004) ("while registrations may be prima facie evidence of ownership, the mere fact that a party registers its copyrights or trademark rights does not create substantive ownership rights in the registrant."). "[T]rademark rights attach based upon use of the mark in commerce and registration provides no additional substantive rights against infringement beyond acquired common law rights." Id. at 437.

"since at least as early as 2016."

However, CAA Industries acknowledges that ME Technology has also used the "RONI" mark since January 2010; the "Micro RONI" mark since January 2016; and the Lion Head mark, Lion Head Composite mark, DDP mark, and CAA trade dress since 2016. Indeed, ME Technology claims it was the main user of the marks and trade dress, which were created for the U.S. market, where ME Technology was the exclusive distributor of the products. The business cards of ME Technology's CEO and senior vice president display the "Gear Up" mark and use "CAA" as the company name.

CAA Industries further argues that in a manufacturer-distributor relationship, "In the absence of an agreement between the parties, the manufacturer is presumed to own the trademark." Excell Consumer Prod. Ltd. v. Smart Candle LLC, No. 11 Civ. 7220 (MEA), 2013 WL 4828581, at *22 (S.D.N.Y. Sept. 10, 2013) (citation and internal quotation marks omitted). However, "an exclusive distributor may rebut this presumption by showing that it gave the goods the benefit of its reputation or of its name and business style." Id. (citation and internal quotation marks omitted). "A distributor does not acquire ownership of a trademark if it merely moves the goods in trade," but "when a distributor buys goods from a manufacturer and then applies its own mark, the distributor rather than the manufacturer owns the

-11-

trademark." Id. at *21 (citation and internal quotation marks omitted).

ME Technology's activities support a finding that it did more than merely move the goods in trade and "gave the goods the benefit of its reputation or of its name and business style." It created popular product videos that achieved millions of views on the Internet, its CEO gave interviews on various television and Internet programs, and it developed a new website.  In a royalty dispute with a third party who had withdrawn both CAA Industries' and ME Technology's licenses to sell an arm brace (an essential component of the Micro RONI conversion kit), ME Technology convinced the third party to reinstate its license; it is currently the only authorized seller of the arm brace, giving the Micro RONI product the benefit of its reputation.

It seems from the submissions on this motion that CAA Industries is unlikely to succeed on the merits of its claims to ownership of the trademarks and trade dress.

Nor has CAA Industries sufficiently established its right to a preliminary injunction on its patent infringement claim. Comparing the patent's written claims regarding construction of the slide pull device with photographs of the MCK conversion kit

to show the similarity of its elements, it may at most raise a fair ground for litigation.

Similarly, disputes over the ownership of the CAA website and its domain name www.CAAGearUp.com and whether the website was developed singly by CAA Industries or jointly with ME Technology, who claims it was the major user, and at whose address and telephone number in Florida it was registered, raise no more than issues requiring trial of the Anticybersquatting Consumer Protection Act claim.

On the whole, the frailty of Plaintiffs' claims of ownership of the rights involved and patent infringement does not support a finding of likelihood of their success on the merits sufficient to justify the entry of a preliminary injunction in their favor.

### Defendant's Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co. v.

Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

"The threshold question in deciding transfer of venue . . . is whether the action could have been brought in the transferee forum." Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009) (citation and internal quotation marks omitted) (omission in original). Plaintiffs do not dispute that this action could have been brought in the Southern District of Florida.[3]

> If this is established, the district court generally should disturb the plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally.

Atl. Recording, 603 F. Supp. 2d at 695.

### 1. Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). "When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number

---

[3] "CAA Industries had only two choices of venue for this action, namely, the S.D. of New York or the S.D. of Florida." Pls. Br. at 1.

located in the proposed transferee forum." Id. "Instead, the
court must qualitatively evaluate the materiality of the
testimony that the witnesses may provide." Id.

"In order to meet its burden, the motion of the party
seeking transfer must specifically list the evidence and
witnesses on which the party intends to rely in the transferee
district, along with a general statement of the topics of each
witness' testimony." Editorial Musical Latino Americana, S.A.
v. Mar Int'l Records, Inc., 829 F. Supp. 62, 66-67 (S.D.N.Y.
1993).

ME Technology states that the most important witnesses in
this action are Moshe Oz, Eldad Oz, Michael Hartman, and Michael
Tiraturia.

Hartman is the CEO of ME Technology and former CEO of CAA
Industries.  Tiraturian is the Senior Vice President of ME
Technology and a director of CAA Industries.  They have personal
knowledge of ME Technology's dealings with CAA Industries and
the development of the contested intellectual property and
website.  Because both work and reside in the Southern District
of Florida, it is the more convenient venue for them.

ME Technology also intends to call Evrold Henry, ME
Technology's former CFO, to testify about the parties' business
relationship, financial arrangements, sales figures, and
financial performance.  Henry also resides in the Southern

-15-

District of Florida.

Guy Yonay is the only named witness who resides in New York.  He will testify about the August 7, 2018 cease-and-desist letter that he wrote to ME Technology when he was CAA Industries' counsel.  Ordinarily, however, the sending and receipt of a letter are not controversial, and its contents are apparent from its text.  This particular letter claims infringement of a patent (the '432 patent) which is not directly in issue: Plaintiffs only claim infringement of the '803 patent, CAA marks, and CAA trade dress.

Moshe Oz and Eldad Oz are both residents of Israel.  Other witnesses who reside outside New York and Florida are: Alon Pomeranc, Tal Hermoni, Dan Alexander & Co., and NGSoft Corporation who reside in Israel; Tomer Birnbaum who resides in Austria; Mark Rabinovich who resides in California; Sky of Blue which is from Singapore; and Jay Portz, Edward Phillips, and Glenn Newman[4] who reside in Pennsylvania.

Those witnesses will all need to travel regardless of whether the action is in New York or Florida, and the greater availability of cheap and direct flights from Israel or Singapore to New York does not weigh against transfer.  See

---

[4] Newman is Plaintiffs' expert witness on damages, and "the location of expert witnesses is entitled to little or no weight in deciding a transfer motion."  Matra Et Manurhin v. Int'l Armament Co., 628 F. Supp. 1532, 1536 (S.D.N.Y. 1986).

Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 288
(S.D.N.Y. 2004) ("The convenience of witnesses who reside in
neither the current nor the transferee forum is irrelevant when
considering a motion to transfer."); Fisher v. Int'l Student
Exch., Inc., 38 F. Supp. 3d 276, 285 (E.D.N.Y. 2014) ("Plaintiff
has offered no compelling reason as to why this action should
remain in New York. Plaintiff is a citizen of Germany and
currently resides there. Accordingly, Plaintiff — and his
witnesses — will have to travel regardless of where the trial of
this action takes place.").

Overall, three witnesses — Hartman, Tiraturian, and Henry —
reside in the Southern District of Florida and will likely
testify regarding dealings between CAA Industries and ME
Technology.  Only one witness, Yonay, resides in New York, and
no reason appears why his testimony regarding a letter may not
readily be videotaped.

This factor decidedly favors transfer.

### 2. Convenience of Parties

Although ME Technology is a New York corporation, its only
place of business is in the Southern District of Florida.

Command LLC is a Pennsylvania limited liability company
with no current operations or employees.

CAA Industries is based in Israel.  It claims that it meets

with its new distributor in New York City, but does not state
how often it travels there or how long it stays.  The past
engagement of a patent attorney in New York City, and its use as
a layover stop in New York during flights to the annual SHOT
trade show in Las Vegas, fall far short of persuasion that New
York is more convenient than Florida for the trial of this case.

Plaintiffs cite four complaints filed in other actions by
other parties against ME Technology (and its affiliate RWC
Group, LLC) in either the Southern District of Florida or
Florida state court.  There are currently three actions between
the parties and their affiliates pending in the Southern
District of Florida: ME Technology, Inc. v. Oz, 19-cv-61907,
Modern Global International Company v. ME Technology, Inc., 19-
cv-62168, and Oz Asset Management, LLC v. ME Technology, Inc.,
19-cv-23619.  There are three additional actions pending in
Florida state court: RWC Group, LLC v. CAA Industries, Ltd.,
CACE-19-16492 (17th Judicial Cir. Ct.), Oz Asset Management v.
RWC Group, LLC, CACE-19-19089 (17th Judicial Cir. Ct.), and
Modern Global International Company v. RWC Group, LLC, CACE-19-
19096 (17th Judicial Cir. Ct.).

The pendency of those actions in Florida (there is none in
New York) strongly supports the transfer of this case.

### 3. *Locus of Operative Facts*

"Courts traditionally give significant weight to the locus of the operative facts of a case."  Canale ex rel. Othmer v. Manco Power Sports, LLC, No. 06 Civ. 6131 (PKL), 2007 WL 2406904, at *5 (S.D.N.Y. Aug. 20, 2007).

The only connection this action has to the Southern District of New York is that ME Technology sells and advertises products in this district, as it does for every other state in the nation.

Florida is where it conducts its business, and the location of the business activity involved in the case.

This factor favors transfer.

### 4. *Location of Documents and Ease of Access to Sources of Proof*

ME Technology claims that all its documents are located in the Southern District of Florida.  Plaintiffs claim that their corporate, patent, trademark, shareholder, and asset purchase documents are located in New York, Pennsylvania, and Israel. The parties do not specify which documents are located in Florida or New York.  This factor is neutral.

### 5. *Availability of Process to Compel Attendance of Unwilling Witnesses*

This factor is neutral, as all parties state that they are unaware of any unwilling witnesses.

### 6. Forum's Familiarity with Governing Law

This factor is neutral, as both districts are familiar with the law governing trademark infringement and patent infringement and the Anticybersquatting Consumer Protection Act.

### 7. Relative Financial Means of Parties

Neither side claims its financial means affect the suitability of the location of trial.  This factor is neutral.

### 8. Plaintiff's Choice of Forum

As might be expected, ". . . plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred."  Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994).

This district is neither plaintiff's home.  CAA Industries' home is Israel and Command LLC's is Pennsylvania.  The operative facts of this action did not occur in New York.

This factor is essentially inoperative in this case.

### 9. Trial Efficiency and Interests of Justice

If they are affected in any way, trial efficiency and the interests of justice are better served by transfer to Florida, where the major witnesses reside, where the relevant business took place, and where litigation between the parties (and their

affiliates) is already underway.

## CONCLUSION

Plaintiffs' motion for preliminary injunction (Dkt. No. 15) is denied.

Defendant's motion to transfer this action (Dkt. No. 54) is granted.  Accordingly, it is ordered that the Clerk transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

So ordered.

Dated:    New York, New York
          October 31, 2019

                              _Louis L. Stanton_
                              LOUIS L. STANTON
                              U.S.D.J.